UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDAL CZERKIES,

        Petitioner,

v.

LLOYD RAPELJE,

        Respondent.

_____/

Civil Action No. 12-CV-11204

HON. BERNARD A. FRIEDMAN

## OPINION AND ORDER DENYING PETITIONER'S APPLICATION FOR A WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS

Randal Czerkies, presently confined at the Lakeland Correctional Facility in Coldwater, Michigan, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application he challenges his conviction and sentence for second-degree murder under Mich. Comp. Laws § 750.317. For the reasons stated below, the Court shall deny the petition.

### I. Background

In 2009 petitioner was charged with first-degree murder, and with being a second habitual offender, for an offense that was committed on June 29, 1993, in Manilus Township, Michigan. Petitioner and Fred McCormick were the last persons seen with the victim, Kevin Plugar, at a bar in Holland, Michigan. The victim's body was later discovered in the woods. An autopsy revealed that the victim had been shot three times in the back of the head and once in the chest. Later in 1993 McCormick told the police that petitioner had informed him that he had "taken care of Kevin." Petitioner was arrested and charged with the murder, but the charges were dismissed when McCormick denied making the incriminating statements to the police. McCormick spent a year in jail for perjury.

In 2008 McCormick was reinterviewed by a "cold case" team. McCormick told the police that petitioner killed the victim while the three men were driving together in the woods. McCormick pleaded guilty to second-degree murder and received a 25 to 50 year prison term. Based on McCormick's new statement, the police interviewed petitioner on June 16, 2008, showing him McCormick's videotaped statement concerning the murder. Petitioner confessed to shooting the victim. Petitioner was arrested and charged with first-degree murder and with being an habitual offender.

On May 28, 2009, petitioner pleaded guilty to a reduced charge of second-degree murder, and in exchange the prosecutor agreed to dismiss the original first-degree murder and habitual offender charges. The prosecutor also agreed to dismiss a second case against petitioner that had charged him with escape and being a second habitual offender. (Tr. 5/28/09, p. 2.) Prior to entering the plea, petitioner indicated under oath that he was not under the influence of any medications and could understand the proceedings. Petitioner further indicated that he had had an opportunity to discuss the plea agreement with his attorney. Petitioner also indicated he understood he was waiving his right to a trial by pleading guilty. Petitioner indicated on the record that he had signed an advice of rights form to the same effect. Petitioner also acknowledged that by pleading guilty he was waiving any defenses to the crime. (*Id.,* pp. 4-5.) Petitioner indicated on the record that no one had forced or coerced him to plead guilty. Petitioner indicated that he had been promised nothing, other than the plea agreement, to induce him to plead guilty. Petitioner stated that the decision to plead guilty was his alone and that he did so because he was guilty. (*Id.,* p. 6.) Petitioner stated on the record that on or about June 29, 1993, he "pulled out a gun that was between me and Fred, after he turned up the radio, and shot Kevin [Plugar]." Petitioner indicated that he shot

2

the victim intentionally and knew that the shot would and did kill him.  (*Id.,* at pp. 7-8.)

At sentencing, the prosecutor referred to the fact that petitioner had written letters to the trial court, in which he claimed that he was innocent of the crime. (Tr. 7/17/09, pp. 14, 18.) When the judge gave petitioner a chance to comment, petitioner did not maintain his innocence, contradict his prior sworn testimony in which he admitted guilt, or otherwise indicate that he wished to withdraw his plea. (*Id.,* p. 19.)  Petitioner was sentenced to 25 to 40 years in prison. (*Id.* at p. 22.)

Six months later, through appellate counsel, petitioner moved to withdraw his plea and to correct his sentence.  The judge denied the motion to withdraw the plea on the merits and denied the motion to correct the sentence as being untimely. (Tr. 2/10/10, pp. 28, 31.) The Michigan Court of Appeals denied petitioner's application for leave to appeal.  *See People v. Czerkies,* No. 296999 (Mich. Ct. App. Apr. 20, 2010).  The Michigan Court of Appeals subsequently reissued the order so that petitioner could file a timely application for leave to appeal to the Michigan Supreme Court.  *See People v. Czerkies,* No. 296999 (Mich. Ct. App. Dec. 7, 2010).  The Michigan Supreme Court denied petitioner leave to appeal.  *See People v. Czerkies*, 489 Mich. 900 (2011).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. The lower court judge abused his discretion by failing to allow Mr. Czerkies to withdraw his plea where it was entered involuntarily and strong factors were presented in support of the assertions of innocence.

II. Defendant's sentence was invalid as it was based on inaccurate information and was disproportionate to the dangerous of the offender.

III. The Sentence guidelines were [misscored].

IV. Due Process requires resentencing where the court enhanced Mr. Czerkies' sentence based on facts neither admitted by Mr. Czerkies nor proven to a jury beyond a reasonable doubt. US Const. AM VI,

3

IV.

In addition to these claims, petitioner has inserted a page into his habeas petition that is not part of the standard habeas form.  The page raises the following three grounds in support of a writ of error coram nobis:

> A.  Due to the deprivation of the due-process-of-the law-clauses as to the violation of the State-of-Michigan and of the United-States-Constitution(s) by the initiation of and the commencement of the proceedings, by the court(s), in the absence of the Subject-Matter jurisdiction for the action so as to render every act and-or the actions of the court below absolutely void.
>
> B.  Due to the non-constitutionality of the statutes (MCL-Michigan-Compiled-Law-Annotated) giving birth to the charges against the Petitioner, for the charging-instrument relied on to validate the charge against the Petitioner do not charge up the violation of a valid law, properly enacted by the State Legislative body, thereby depriving the court below of the Subject-Matter jurisdiction necessary to proceed against the Petitioner, and, therefore, the entire action against the Petitioner must be dismissed.
>
> C.  Due to a lack of the "In-Personam-Jurisdiction," by the court, (sic) below is without the power necessary to proceed against the Petitioner.

## II.  Legal Standards

The following standard of review applies in habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the

4

evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

        "A federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The habeas statute "thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

        In the present case, the Michigan Court of Appeals on petitioner's direct appeal denied petitioner's application for leave to appeal in a form order "for lack of merit in the grounds presented."  The Michigan Supreme Court subsequently denied petitioner leave to appeal in a standard form order without any extended discussion.  Determining whether a state court's decision

resulted from an unreasonable legal or factual conclusion, as would warrant federal habeas relief, does not require that there be an opinion from the state court that explains the state court's reasoning. *See Harrington,* 131 S. Ct. at 784. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* In fact, when a habeas petitioner has presented a federal claim to a state court and the state court has denied relief, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 784-85. That presumption may be overcome only when there is a reason to believe that some other explanation for the state court's decision is more likely. *See id.* at 785. In the present case, the deferential standard of review applies. As noted, the Michigan Court of Appeals rejected petitioner's appeal "for lack of merit in the grounds presented" and the Michigan Supreme Court subsequently denied leave to appeal in a standard form order, and these orders amounted to a decision on the merits. *See Werth v. Bell,* 692 F. 3d 486, 492-94 (6th Cir. 2012); *Hardaway v. Robinson,* 655 F. 3d 445, 447, 449 n.1 (6th Cir. 2011).

### III. Discussion

#### A. Claim 1: The Plea Withdrawal Claim

Petitioner first contends that he should have been permitted to withdraw his guilty plea because the plea was entered involuntarily and he is innocent of the murder.

Petitioner has no absolute right to withdraw his guilty plea. *See Shanks v. Wolfenbarger,* 387 F. Supp. 2d 740, 748, 655 (E.D. Mich. 2005) (internal citations omitted). Therefore, unless the plea violated a clearly established constitutional right, the state trial court had

6

discretion whether to allow petitioner to withdraw his guilty plea. A guilty plea that is entered in state court must be voluntarily and intelligently made. *See Shanks,* 387 F. Supp. 2d at 749; *Doyle v. Scutt,* 347 F. Supp. 2d 474, 482 (E.D. Mich. 2004). The defendant must be aware of the "relevant circumstances and likely consequences" of his plea. *Hart v. Marion Corr. Inst.*, 927 F.2d 256, 257 (6th Cir. 1991); *Shanks,* 387 F. Supp. 2d at 749. He must also be aware of the maximum sentence that can be imposed for the crime for which he is pleading guilty. *See King v. Dutton*, 17 F.3d 151, 154 (6th Cir. 1994). "When a defendant subsequently brings a federal habeas petition challenging his plea, the state generally satisfies its burden by producing a transcript of the state court proceeding. The factual findings of a state court that the plea was proper generally are accorded a presumption of correctness." *See Garcia v. Johnson*, 991 F. 2d 324, 326 (6th Cir. 1993). "It is only when the consensual character of the plea is called into question that the validity of a guilty plea may be impaired. . . . A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)."

*Mabry v. Johnson*, 467 U.S. 504, 508-09 (1984) (citations and internal quotations omitted). On habeas review, a federal court "will uphold a state court guilty plea if the circumstances demonstrate that the defendant understood the nature and consequences of the charges and voluntarily chose to plead guilty." *See Thirkield v. Pitcher,* 199 F. Supp. 2d 637, 652 (E.D. Mich. 2002) (quoting *Cunningham v. Diesslin*, 92 F.3d 1054, 1060 (10th Cir. 1996)).

In the present case, the evidence establishes that petitioner freely and voluntarily pleaded guilty to the above charge.  Petitioner was advised of the maximum penalties for the charge and the rights that he would be waiving by pleading guilty.  Petitioner was advised of the terms of the plea agreement and acknowledged that these were the complete terms of the agreement.  In response to the trial court's questions, petitioner denied that any other promises had been made to get him to plead guilty.

Petitioner first appears to argue that his trial counsel coerced him into making out a factual basis for the plea.  This claim is defeated by the fact that petitioner stated on the record at the plea hearing that no threats had been made to get him to plead guilty and that he was doing so freely and voluntarily.  Petitioner's bare claim that he was coerced into pleading guilty is insufficient to overcome the presumption of verity which attaches to petitioner's statements during the plea colloquy, in which he denied that any threats had been used to get him to enter his plea. *See Shanks,* 387 F. Supp. 2d at 750-51.  Moreover, "[w]here a defendant is aware of the condition or reason for a plea withdrawal, at the time the guilty plea is entered, a case for withdrawal is weaker." *United States v. Spencer,* 836 F. 2d 236, 239 (6th Cir. 1987).  Because petitioner knew about this alleged coercion at the time that he entered his plea, his unexplained delay in bringing the alleged coercion to the attention of the trial court months later and after he had been sentenced undermines the credibility of his claim.  *See United States v. Ford,* 15 F. App'x 303, 309 (6th Cir. 2001).

Petitioner next contends that the plea agreement was illusory because his attorney informed him that he would receive a sentence of 10 to 25 years in prison and would probably be out of prison after eight years.  A plea agreement is entered into involuntarily and unknowingly if

8

the defendant is unaware that the prosecution's promise is illusory. *See United States v. Randolph*, 230 F.3d 243, 250-51 (6th Cir. 2000).  Illusory representations made by the prosecutor to induce a defendant to waive his right to trial and enter a guilty plea have been found to constitute coercion justifying the withdrawal of a guilty plea. *See Spearman v. U.S.*, 860 F. Supp. 1234, 1249 (E.D. Mich. 1994).

   As noted above, the prosecutor agreed to dismiss the original first-degree murder charge, which carried a mandatory nonparolable life sentence.  The prosecutor also dismissed the habitual offender charge and another case that charged petitioner with escape.  The Court concludes that the plea agreement was not illusory because petitioner was promised the dismissal of charges which therefore amounted to a real, tangible benefit in consideration for the plea.  *See McAdoo v. Elo,* 365 F. 3d 487, 498 (6th Cir. 2004); *Daniels v. Overton*, 845 F. Supp. 1170, 1174 (E.D. Mich. 1994).

   To the extent that petitioner claims that his trial counsel misled him into believing that he would receive 10 to 25 years in prison if he pleaded guilty, "the state trial court's proper colloquy can be said to have cured any misunderstanding [a habeas petitioner] may have had about the consequences of his plea." *Ramos v. Rogers*, 170 F. 3d 560, 565 (6th Cir. 1999).  Prior to accepting petitioner's guilty plea, the trial judge and the prosecutor placed the entire plea agreement on the record, which called for petitioner to plead guilty to second-degree murder in exchange for dismissal of the first-degree murder and habitual offender charges and his pending escape case. There was no sentence agreement placed on the record.  Petitioner acknowledged on the record that there had been no additional promises to get him to plead guilty.  Petitioner was not denied the effective assistance of counsel due to his counsel's alleged promise that he would receive 10 to 25

years in prison if he pleaded guilty to the second-degree murder charge, where the plea agreement contained no such promise and petitioner stated at the plea hearing that he understood the terms of the plea agreement and the consequences of his plea. *See Bridinger v. Berghuis,* 429 F. Supp. 2d 903, 910-11 (E.D. Mich. 2006)*; Sellers v. U.S.,* 316 F. Supp. 2d 516, 521 (E.D. Mich. 2004).

Petitioner further claims that his trial counsel was ineffective in advising him to plead guilty, in light of the fact that petitioner had informed him that he could not remember the crime due to memory loss caused by a head injury that he had suffered during a car crash in April 1988. Petitioner further claims that he was influenced into falsely confessing to the crime after being shown Fred McCormick's videotaped statement implicating petitioner in the murder.

To show that he was denied the effective assistance of counsel, petitioner must satisfy a two-prong test. First he must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (citation and internal quotation omitted). Second, petitioner must show that such performance prejudiced his defense. *See id.* at 691-92. To demonstrate prejudice, petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6ᵗʰ Cir. 2011) (quoting *Harrington*, 131 S. Ct. at 792). Further, "the burden [is] on

10

[petitioner], not the State, to show a reasonable probability that the result would have been different." *Wong v. Belmontes*, 130 S. Ct. 383, 390-91 (2009) (citation and internal quotation omitted).

Moreover, on habeas review "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'" *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).   Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 129 S. Ct. at 1420. Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.*

To satisfy *Strickland*'s prejudice requirement in the context of a guilty plea, petitioner must "demonstrate 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"  *Premo v. Moore*, 131 S. Ct. 733, 743 (2011) (*quoting Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)).  An assessment of whether a defendant would have gone to trial but for counsel's errors "will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill,* 474 U.S. at 59.  This, in turn, depends on an assessment of the substance of the habeas petitioner's underlying claim or defense. *See Maples v. Stegall,* 340 F. 3d 433, 440 (6th Cir. 2003).  The petitioner must therefore show a reasonable probability that but for counsel's errors he would not have pleaded guilty because there would have been a reasonable chance that he would have been acquitted had he gone to trial.  *See Garrison v. Elo,* 156 F. Supp. 2d 815, 829 (E.D. Mich. 2001).  A habeas petitioner "must convince

the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

Petitioner has failed to show a reasonable probability that he could have prevailed had he insisted on going to trial, or that he would have received a lesser sentence than he did by pleading guilty. Petitioner was facing a mandatory, nonparolable life sentence on the original first-degree murder charge. Petitioner's accomplice Fred McCormick had identified him as the shooter. More importantly, petitioner had made a full confession to shooting and killing the victim. Although petitioner claims that he has no memory of the events due to a head injury and was influenced by the police to falsely confess to the crime, he has presented no evidence to either the state courts or to this Court that would corroborate his claim that he suffers from any brain malfunction that would prevent him from remembering the events surrounding the murder or would make him unduly susceptible to falsely confessing to the crime. Petitioner's counsel was able to negotiate a plea agreement with the prosecutor that permitted petitioner to plead guilty to a reduced charge of second-degree murder, which carries a sentence of any term of years up to life in prison and is parolable. Counsel also obtained a dismissal of the habitual offender charge and an additional escape case.

The evidence of petitioner's guilt regarding the original first-degree murder charge was substantial. Fred McCormick's statement implicating petitioner in the shooting, along with petitioner's own confession, was substantial evidence of petitioner's guilt. The evidence also established that the victim had been shot three times in the head and once in the chest and that his body had subsequently been hidden in a wooded area. This evidence would also tend to show that petitioner acted with premeditation and deliberation when he shot the victim. Based on the

12

evidence, trial counsel could reasonably have feared that petitioner could have been convicted of first-degree murder if he had proceeded to trial. Under the circumstances, trial counsel's advice to plead guilty to a reduced charge of second-degree murder was a reasonable strategy. *See Bonior v. Conerly,* 416 F. App'x 475, 479 (6ᵗʰ Cir. 2010).

Finally petitioner contends that he should be permitted to withdraw his guilty plea because he is actually innocent of the murder. "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). "Bald assertions of innocence are insufficient to permit a defendant to withdraw his guilty plea. Assertions of innocence must be buttressed by facts in the record that support a claimed defense." *U.S. v. Jones*, 336 F. 3d 245, 252 (3ʳᵈ Cir. 2003) (citation and internal quotation omitted). "[T]he 'mere assertion of innocence, absent a substantial supporting record,' is insufficient to overturn a guilty plea, even on direct appeal." *Everard v. U.S.*, 102 F. 3d 763, 766 (6ᵗʰ Cir. 1996) (quoting *U.S. v. Ludwig*, 972 F.2d 948, 951 (8ᵗʰ Cir. 1992)). Petitioner's mere recantation of his guilty plea, without any support, would is therefore an insufficient basis for overturning his plea.

In the present case, petitioner has presented no evidence to this Court that he is actually innocent of the crime. Petitioner's conclusory and unsupported allegations that he cannot remember killing the victim and that he falsely confessed to the crime are insufficient to invalidate his guilty plea. Moreover, petitioner clearly made out a factual basis for the murder charge at the plea hearing. Petitioner is not entitled to withdraw his guilty plea on his claim of innocence, in light of the fact that petitioner stated under oath at his guilty plea hearing that he was guilty of shooting the victim. Petitioner is not entitled to habeas relief on this claim.

**B. Claims 2, 3 and 4: The Sentencing Claims**

13

In his second, third, and fourth claims, petitioner challenges his sentence on several grounds. "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005). Therefore, claims which arise out of a state trial court's sentencing decision are not normally cognizable on federal habeas review, unless the habeas petitioner can show that the sentence imposed "exceeded the statutory limits or is wholly unauthorized by law.*"* *Haynes v. Butler*, 825 F.2d 921, 923-24 (5ᵗʰ Cir.1987). Conversely, a sentence imposed within the statutory limits generally is not subject to habeas review. *See Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).

In his second claim petitioner contends that his sentence was disproportionate. The United States Constitution does not require that sentences be proportionate. *See Harmelin v. Michigan*, 501 U.S. 957, 965 (1991). The Eighth Amendment forbids only extreme sentences that are grossly disproportionate to the crime. *See id.* at 1001. A sentence within the maximum set by statute normally cannot be challenged on constitutional grounds. *See Austin v. Jackson,* 213 F.3d 298, 302 (6ᵗʰ Cir. 2000). Successful challenges to the proportionality of a particular sentence in non-capital cases are "exceedingly rare." *Rummel v. Estelle*, 445 U.S. 263, 272 (1980).

In the present case, petitioner's sentence of 25 to 40 years in prison was within the statutory limits of the offense of second-degree murder. The trial judge sentenced petitioner to less than the maximum sentence of life imprisonment. Petitioner's minimum sentence of 25 years was within the sentencing guidelines range of 144 to 300 months or life. In Michigan, sentences within a correctly scored guidelines range are presumptively proportionate. *See Hastings v. Yukins,* 194 F. Supp. 2d 659, 673-674 (E.D. Mich. 2002). The Court concludes that petitioner's sentence of 25

14

to 40 years in prison for second-degree murder was not extreme or grossly disproportionate to the offense or to the offender, so as to entitle him to habeas relief. *See Benton v. Booker,* 403 F. App'x 984, 986 (6th Cir. 2010) (25–50 year sentence for second-degree murder conviction found to be not unconstitutionally disproportionate); *Friday v. Pitcher,* 200 F. Supp. 2d 725, 744-45 (E.D. Mich. 2002) (25 to 65 year sentence for second-degree murder not disproportionate).

In his third claim, petitioner contends that he should not have been given 50 pounds for premediation for Offense Variable (OV) 3 of the Michigan Sentencing Guidelines because the first-degree premeditated murder charge was dismissed as part of the plea agreement. A claim that the state trial court incorrectly scored or calculated the sentencing range under the Michigan Sentencing Guidelines is not cognizable on federal habeas review because this is a state law claim. *See Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007)*; Howard v. White,* 76 F. App'x 52, 53 (6th Cir. 2003); *Whitfield v. Martin,* 157 F. Supp. 2d 758, 762 (E.D. Mich. 2001). "Petitioner has no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence." *See Mitchell v. Vasbinder,* 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009). "[I]n short, petitioner had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004).

In his related fourth claim, petitioner contends that the trial court judge violated his Sixth Amendment right to a trial by jury by using factors that were not submitted to a jury and proven beyond a reasonable doubt or admitted to by petitioner when scoring OV 3 of the Michigan Sentencing Guidelines. The Supreme Court recently ruled that any fact that increases the mandatory minimum sentence for a crime is an element of the criminal offense that must be proven

beyond a reasonable doubt. *See Alleyne v. U.*S., 133 S. Ct. 2151, 2155 (2013). In reaching this conclusion, the Supreme Court overruled *Harris v. U.S.*, 536 U.S. 545 (2002), in which the Supreme Court had held that only factors that increase the maximum, as opposed to the minimum, sentence must be proven beyond a reasonable doubt to a factfinder. At the time of petitioner's conviction and sentence, however, *Harris* was binding. There is no indication that the Supreme Court made its holding in *Alleyne* retroactive to cases on collateral review. *See Simpson v. U.S.,* 2013 WL 3455876, at *1 (7th Cir. July 10, 2013); *Gibson v. Tribley,* 2013 WL 3353905, at *8 (E.D. Mich. July 3, 2013). Because the Supreme Court at the time of petitioner's conviction and sentence did not require that facts which increase a criminal defendant's minimum sentence be proven beyond a reasonable doubt, petitioner is not entitled to habeas relief on his fourth claim.

### C. The Claims Raised by Petitioner in his Petition for a Writ of Coram Nobis

As noted above, petitioner has also raised three claims in a petition for writ of coram nobis, in which he challenges the state court's jurisdiction over his criminal case. Petitioner is not entitled to relief on these three claims for several reasons.

First, "[a] writ of error coram nobis is not the proper procedural vehicle to contest a state court conviction in federal court." *Burkhart v. Ohio*, 755 F. 2d 931 (6th Cir. 1985). Thus, petitioner cannot use such a petition to challenge his conviction and sentence.

Secondly, there is no indication that petitioner exhausted these claims with the state courts. A prisoner seeking federal habeas relief must first exhaust his or her available state court remedies before raising a claim in federal court. *See* 28 U.S.C. § 2254(b) and (c); *Picard v. Connor*, 404 U. S. 270, 275-78 (1971). Although petitioner attempted to file this petition for a writ of coram

nobis with the Allegan County Circuit Court, the trial court dismissed the petition because it did not comply with the requirements for filing a post-conviction motion found in MCR 6.500, *et. seq. See People v. Czerkies,* No. 08-16009-FC (Allegan County Cir. Ct., Sept. 22, 2011).  There is no indication that petitioner ever re-filed a motion for relief from judgment pursuant to MCR 6.500, *et. seq.* with the trial court, nor is there any indication that he appealed the denial of any such motion to the Michigan appellate courts.  Having failed to demonstrate exhaustion, petitioner may not seek habeas relief on these claims.

Third, assuming that petitioner's jurisdictional claims were exhausted, he would nonetheless not be entitled to habeas relief.  The determination of whether a state court is vested with jurisdiction under state law over a criminal case is a function of the state courts, not the federal courts. *See Wills v. Egeler,* 532 F.2d 1058, 1059 (6th Cir. 1976); *Daniel v. McQuiggin,* 678 F. Supp. 2d 547, 553 (E.D. Mich. 2009).  Petitioner's claims that the trial court lacked jurisdiction to try his case raise an issue of state law that is not cognizable in federal habeas review.

## IV.  Conclusion

For the reasons stated above, the Court concludes that petitioner is not entitled to a writ of habeas corpus.  For the same reasons, the Court also concludes that no certificate of appealability shall issue, as petitioner has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  The Court shall likewise deny leave to appeal in forma pauperis, as any appeal would be frivolous.  *See* 28 U.S.C. § 1915(a)(3).  Accordingly,

IT IS ORDERED that the petition in this matter for a writ of habeas corpus is

denied.

IT IS FURTHER ORDERED that no certificate of appealability shall issue.

IT IS FURTHER ORDERED that petitioner may not proceed on appeal in forma

pauperis.


S/ Bernard A. Friedman_____
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

Dated:  September 19, 2013
        Detroit, Michigan

18